UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| EL POLLO LOCO, S.A. DE C.V., | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. L-04-48 |
| | § | |
| EL POLLO LOCO, INC., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the Court is Defendant El Pollo Loco, Inc.'s Consolidated Motion for New Trial or Remittitur. [Dkt. No. 186]. Having considered the motion and the relevant law, Defendant's motion is DENIED.

## I.    BACKGROUND

On July 23, 2007, the above-styled matter came to be heard for trial before a panel of twelve jurors. [*See* Dkt. Nos. 147, 151-52 & 153-54]. After a four-day trial, the jury ruled in favor of Plaintiff El Pollo Loco, S.A. de C.V. [Dkt. No. 157]. The Court entered a final judgment against Defendant on November 30, 2007, declaring the following: (1) that pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, Defendant materially breached the 1996 Intellectual Property Acquisition Agreement ("the Agreement") as found by the jury at trial; (2) that Defendant shall cease and refrain from using the Intellectual Property assigned under the Agreement and assign it to Plaintiff; (3) that Plaintiff shall recover damages from Defendant in the total amount of $20,251,000, comprised of $10,125,500 for compensatory damages resulting from illicit acts and of $10,125,500 for moral damages; and (4) that Plaintiff is entitled to recover attorneys' fees from Defendant. [Dkt. No. 183].

Defendant filed the present motion on December 14, 2007, arguing that the amount of the damages award "is excessive when viewed in light of other awards of moral damages and in light of the nature of the claimed injuries." [Dkt. No. 186 at 5]. Defendant also argues that Plaintiff's counsel made prejudicial and inflammatory remarks during closing argument. [*Id.* at 21]. Accordingly, Defendant requests that the Court order a remittitur of the damages awards for illicit acts and moral damages and a new trial based on Plaintiff's improper appeals to passion and prejudice. [*Id.* at 22].

## II.    DISCUSSION

### A.    Remittitur

#### 1.    *Legal Standard*

A district court may grant remittitur when the damages award is "excessive or so large as to appear contrary to the right reason." *Marcel v. Placid Oil Co.*, 11 F.3d 563, 568 (5th Cir. 1994); *see also Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 786 (5th Cir. 1983) (holding that a verdict is excessive if it is "contrary to right reason" or "entirely disproportionate to the injury sustained"). A court does not "reverse a jury verdict for excessiveness except on the strongest of showings." *Caldarera*, 705 F.2d at 784. In the Fifth Circuit, the court "will not disturb the jury's award unless it is entirely disproportionate to the injury sustained." *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1427 (5th Cir. 1992); *Caldarera*, 705 F.2d at 784.

The Court reviews awards "in cases with similar injuries in the relevant jurisdiction" when evaluating whether a jury award is proper. *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). In a state-law claim, the relevant jurisdiction is the state providing the substantive law for that claim. *Id.* In a case where remittitur is appropriate, the court must calculate the amount of remittitur according to the maximum recovery rule, "which mandates that the jury's

verdict be reduced to the maximum amount the jury could properly have awarded." *Wellborn*, 970 F.2d at 1428. This rule provides that a court will not reduce damages where the amount awarded is not disproportionate to at least one factually similar case from the same jurisdiction. *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002) (citing *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1344 (5th Cir. 1990)). Nevertheless, "because the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited if unique facts are present that are not reflected within the controlling case law." *Id.*

### 2. Analysis

Because Mexican law governs the substantive claims, Mexico is the controlling jurisdiction for purposes of remittitur. *See Douglass*, 897 F.2d at 1330. In his affidavit, Defendant's Mexican Law Expert Claus von Wobeser states that "Mexico has a Civil Law system [in which] statutes are the primary source of law" and "only the most relevant cases are published as a whole by the federal judicial power in an official magazine." [Dkt. No. 186-2 ¶¶ 22-23]. Thus, "it is very difficult to obtain much 'official' information about the cases that have dealt with the moral damage issues." [*Id.* at ¶ 23]. Accordingly, rather than submit an official text from judicial decisions, Defendant offers press reports about several Mexican cases—which it claims share similar awards—as proof of the award's excessiveness by comparison. [*See* Dkt. No. 186 at 8-9 (citing to *Velasco y Felix v. Leon*; *Silva v. PRD*; *Sahagun v. Wornat & Revista Proceso*; *Comexma v. Levi Strauss*; and *Consultores en Computacion y Contabilidad v. Microsoft Corp., Adobe Sys., Inc., Autodesk Inc., and Symanted Corp.* ("*CCC*"))]. Defendant claims that "[a] comparison of the present case to other cases awarding moral damages in Mexico reveals that the jury's $10,125,000 award of moral damages *far exceeds* any comparable award of moral damages in Mexican cases." [*Id.* at 8].

However, Plaintiff argues that Defendant's press reports "supply a doubtful foundation for analysis" which, even if they furnished legitimate data points, "would only reinforce the jury's verdict here." [Dkt. No. 192 at 2]. The Court will now analyze the applicability of these cases to the issue at hand and explain why the maximum recovery rule is not mandated here.

First, while the courts did not award more than $200,000 for moral damages in either *Velasco y Felix*; *Silva*; or *Sahagun*, Plaintiff correctly points out that none of these cases come even close to complying with the maximum recovery rule because they are not "factually similar" given that they are defamation cases with individual plaintiffs. [*See id* at 3].

The two other cases that Defendant relies on—*Comexma* and *CCC*—are more factually similar to the present case in that they both involve corporate plaintiffs, illicit conduct by the Defendant, and substantial moral damages  [*See* Dkt. No. 186-2 at 16, 17]. Nevertheless, the Court does not consider them to be reliable bases of comparison to the present case.  In *Comexma*, the trial court awarded plaintiff approximately $24.5 million dollars in direct damages and $20.5 million dollars in damages for harm to the plaintiff's reputation.  [*Id.* at 49].  As Defendant points out, on appeal, the court overturned the lower court decision and dismissed the award, thereby suggesting that the award was invalid.  [Dkt. No. 186 at 8-9].  However, the relevant press clippings indicate that "the appellate court found that there was no direct relationship between the raid and Comexma's decision to close the facility, that the damages claimed by Comexma weren't caused by the raid, and that there was no intent by Levi Strauss to harm the former contractor." [Dkt. No 186-2 at 51].  Nothing in the press reports indicate that the appellate court considered the monetary award to be excessive or disproportionate to the harm.  Rather, the appellate court dismissed the award based on a lack of causation. [*See id.* at 49, 51].  Thus, *Comexma* cannot function to undermine the jury's award.

Defendant also attempts to demonstrate the alleged excessiveness of this Court's moral-damage award by arguing that *CCC*—in which the court awarded plaintiffs $90 million dollars in moral damages against four large U.S. software companies—is unlike this case. [*See* Dkt. No. 186 at 9]. Defendant claims that in *CCC* the facts were far more egregious and the damage award was more in line with the economic situation of the parties than in the present case. [*Id.*]. While defendant's actions in *CCC* were in fact severe, they cannot be equated to this case given the distinctive nature of the underlying facts of each. Additionally, Defendant has provided insufficient evidence to demonstrate that a Mexican court would consider the moral damages award in this case to be excessive under the factors that a court must take into account when determining the amount of indemnification for moral damages.[1] While the Court must consider the economic situation of the parties, it is only but one factor. Finally, the Court agrees with Plaintiff that Defendant's "percentage of net worth" formula for determining moral damages based on the "stockholder's equity" of the companies is bereft of any citation to the actual case or to a rule providing for calculations based on a percentage of a company's share value.

The Court recognizes the inherent differences in the Mexican system's method of recording judicial decisions. However, the Fifth Circuit has declined to rely on unreported decisions as benchmarks for the maximum recovery rule. *Lebron*, 279 F.3d at 326 ("None of these awards is officially reported, except for one that was reversed on appeal in a reported decision, on which we therefore do not rely.") The Fifth Circuit has explained the rationale for this policy:

> . . . from a practical standpoint, the comparability of unreported decisions is hard to judge from the records available. The Lebrons offer a mix of summary reports of verdicts from an unofficial publication, The Blue Sheet of Texas, and attorney

---

[1] These factors include: (1) the rights that have been injured; (2) the degree of liability; and (3) the respective economic situation of the parties. Federal Civil Code art. 1916.

> affidavits.  Use of such hearsay would create more problems than it would solve
> by provoking irrelevant disputes over the comparability of unreported decisions.

*Id.*  Similar to the evidence presented in *Lebron*, Defendant has submitted newspaper clippings,

summaries, and comparative award calculations of the cases it cites.  However, the Court is

unable to do a thorough independent analysis of the records for these cases.  Accordingly,

although the cases may be relevant for comparison in the remittitur analysis, the Court is not

required to use them as boundaries under the maximum recovery rule.

Defendant also argues that the jury's award of both illicit acts and moral damages is

excessive and should be remitted because of insufficient evidence.  [Dkt. No. 186 at 13, 19-20].

Defendant relies on three factors that the Fifth Circuit considered in *Thomas v. Texas Dep't of*

*Criminal Justice* to argue that (1) Plaintiff's claimed award is not so severe as to support the

award; (2) Plaintiff's claimed harm is not so "tightly linked" or sufficiently connected to

Defendant's wrongful conduct as to support the award; and (3) the remaining factors considered

in awarding moral damages do not support the award.  [Dkt. No. 186 at 14-19 (citing 297 F.2d

361, 372 n.12 (5th Cir. 2002))].  Plaintiff correctly points out that Defendant errs by citing to

Fifth Circuit and Texas state court decisions rather than relying on applicable Mexican law.  [*See*

Dkt. No. 192 at 4].  Nevertheless, even under these factors, the Court finds that a remittitur is not

warranted.

Given the large volume of evidence presented in this case, the Court will not repeat every

allegation, claim, or argument here.  The size of the verdict in this case is significant, but the

Court is of the opinion that Plaintiff did in fact present sufficient evidence to the jury regarding

its injury to support the award of damages set out in the judgment.  The Court agrees with

Plaintiff that the evidence demonstrates the egregiousness of Defendant's conduct, which

included, among other things, lying about their intentions, abandoning the existing franchises,

ignoring Plaintiff's requests for action, ignoring warnings about harm to Plaintiff's brand, refusing termination of the Agreement, and clandestinely registering the trademarks in Defendant's name after termination of the Agreement. [*Id.* at 6-7]. Defendant argues that the only "loss" that Plaintiff could have suffered as a result of a breach of the Agreement is the value of the trademarks, which it claims is valued at $3.2 million—"the only damage number even conceivably supported by the evidence." [Dkt. No. 186 at 20]. However, at trial, Plaintiff submitted evidence of Defendant's conduct and subsequent harm to the El Pollo Loco stores and to Plaintiff's reputation. [*See* Dkt. No. 162-1 at 16 (Plaintiff's brief summary of the evidence it presented to the jury, including abandonment of the stores and subsequent deterioration, loss of business and position in the market, brand deterioration, etc.)]. After listening to four days of evidence, the jury returned a verdict for Plaintiff, arriving at an amount of damages it considered to be just and proper within its discretion.

In short, the Court does not consider the award of damages to be excessive in light of the facts of this case, the evidence presented, and the relevant law. Thus, because Defendant has failed to present "the strongest of showings," *see Caldarera*, 705 F.2d at 784, that the award "is entirely disproportionate to the injury sustained," *see Wellborn*, 970 F.2d at 1427, the Court will not disturb the jury's award and therefore denies Defendant's motion for remittitur.

### B.     Motion for a New Trial

#### 1.     *Legal Standard*

Federal Rule of Civil Procedure 59 permits a motion for new trial by any party and on all or any of the issues within ten days after judgment is entered. Fed. R. Civ. P. 59. While Rule 59 does not enumerate the grounds for a new trial, a district court may grant it if the court finds that the verdict is against the weight of the evidence, the damages are excessive, or "where necessary

to 'prevent an injustice.'"  *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993) (quoting

*Delta Eng'g Corp. v. Scott*, 322 F.2d 11, 15-16 (5th Cir. 1963), *cert. denied*, 377 U.S. 905,

(1964)); s*ee also Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  The Fifth

Circuit gives trial courts a great deal of discretion in determining whether a new trial should be

granted.  *United States v. Lauga*, 726 F.2d 1032, 1035 (5th Cir. 1984).  The court is given great

latitude when the motion cites errors in the conduct of the trial because the trial court "occupies

the best vantage from which to estimate the prejudicial impact of the error on the jury."

*Cruthirds v. RCI, Inc.*, 624 F.2d 632, 635 (5th Cir. 1980); s*ee also Allied Chem. Corp. v. Daiflon,

Inc.*, 449 U.S. 33, 36 (1980); *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).  A new

trial is properly granted when it is "reasonably clear that prejudicial error has crept into the

record or that substantial justice has not been done."  *Laxton v. Gap, Inc.*, 333 F.3d 572, 586 (5th

Cir. 2003) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir.

1979)).

### 2.    *Analysis*

Defendant argues that the Court should grant a new trial based on Plaintiff's improper

appeals to passion and prejudice during closing argument.  [Dkt. No. 186 at 21-22].  Defendant

claims that "Plaintiff did not ask the jury what would compensate Plaintiff for damage to its

honor and reputation, but rather what was required for Defendant to redeem its sin."  [*Id.* at 21].

Plaintiff first points out that Defendant failed to object to the allegedly improper remarks during

closing argument.  [Dkt. No. 192 at 7].  The Court agrees that rather than object or move for a

mistrial, Defendant allowed the case to go to the jury.  As such, the Court finds that Plaintiff's

remarks are not grounds for a new trial, and Defendant is barred "from urging the improper

arguments as grounds for a new trial after the jury had returned its verdict."  [*See id.* at 8

8 / 11

(quoting *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59 69 (1st Cir. 1984)) and (citing

to *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989)); *Nissho-Iwai Co., Ltd. v.

Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988))].  While Defendant is precluded

from raising this claim, the Court will nevertheless address its arguments.

Plaintiff did in fact made a reference to the Catholic Church in its closing remarks, but it

did so within the context of telling the jury that it was up to them to determine the measure of

moral damages—"the damage to the honor of the Ochoa family, damage to the reputation of the

Ochoa family, the damage to the image of Pollo Loco-Mexico in Mexico in the public

perception."  [*See* Dkt. No. 173-4 at 1].  The Court agrees with Plaintiff that its reference to

medieval Catholic doctrine was nothing more than a guidepost for valuing moral damages.  [Dkt.

No. 192 at 9].  This is so particularly in light of the Court's previous finding that defining the

nebulous concept of "good customs" under Mexican law may involve reliance on "theological,

sociological, and anthropological sources."  [S*ee* Dkt. No. 118 n.14 (citing to *Curley v. AMR

Corp.*, 153 F.3d 5, 15 (2nd Cir. 1998))].

Furthermore, Defendant relies on Fifth Circuit authority to argue that "[t]he wide latitude

generally given to counsel during jury argument ends when counsel resorts to religious bias as a

basis on which to award damages."  [Dkt. No. 186 at 21].  Defendant cites to *Schleunes v.

American Casualty Co.* in support of its argument, a case in which the mother of a deceased

insured brought suit to recover accidental death benefits on a group life insurance policy.  [*See

id.* (citing 528 F.2d 634, 635 (5th Cir. 1976))].  The sole issue in that case was whether the death

was accidental or by suicide.  528 F.2d at 637.  During closing remarks, plaintiff's counsel told

the jurors that if they found that the deceased had committed suicide, "they would be

condemning the boy to eternal damnation."  *Id.* at 638.  The court found that by placing upon the

jury's shoulders the divine responsibility and undue burden of determining whether the deceased was going to heaven or hell, plaintiff's counsel prejudiced the jury and forced them "to decide more than the question of suicide or accidental death."  *Id.*  The prejudicial potential of such remarks can hardly be paralleled to the present case, where plaintiff's counsel was simply trying to help the jury understand a foreign concept, not inject religious bias by imposing on them the burden of punishing Defendant according to divine law.

Similarly, Defendant attempts to draw an analogy between the present case and *Whitehead v. Food Max, Inc.*, where counsel asked the jury to "imagine how it would feel to have a knife in your side or a knife on your leg or a pistol at your neck for ten seconds," thereby inviting the jurors to place themselves in the plaintiff's position when deciding damages.  [Dkt. No. 186 at 21 (citing 163 F.3d 265, 278 (5th Cir. 1998))].  Again, this pseudo-meditative exercise is very different from what Plaintiff's counsel did—simply asking the jury to evaluate moral damages and attempting to explain its meaning via the medieval redemption approach of the Catholic Church.  [*See* Dkt. No. 173-4 at 2].  The Court believes that Plaintiff's closing remarks were unconventional—and on Plaintiff's admission, "antiquated," [Dkt. No 192 at 9]— but certainly not prejudicial.

Thus, in light of the circumstances surrounding this case—namely the difficulty of defining foreign concepts and interpreting foreign law—this Court does not believe that Plaintiff's remarks carry the inflammatory or prejudicial burden that Defendant suggests.  In the absence of prejudicial error, a new trial is not warranted.

## III.   CONCLUSION

Plaintiff submitted sufficient evidence for a reasonable jury to return a verdict in its favor for two awards in the amount of $10,125,500 each.  As such, the motion for remittitur is

DENIED.   Additionally, because Defendant's arguments for new trial are without merit, that

motion is also DENIED.

      IT IS SO ORDERED.

      DONE this 12th day of February, 2008, in Laredo, Texas.

 

                   Micaela Alvarez
              UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**