### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| **EL POLLO LOCO, S.A. DE C.V.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **VS.** | § | **CIVIL ACTION NO. L-04-48** |
| | § | |
| **EL POLLO LOCO, INC.,** | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Application for Attorneys' Fees and Related Non-Taxable Expenses. Having considered the pertinent pleadings, the Court GRANTS Plaintiff's Application in part and DENIES it in part. The Court will first address Plaintiff's entitlement to attorneys' fees under Mexican substantive law and will then calculate the appropriate amount of fees to be paid.

## I.      BACKGROUND

On July 23, 2007, the above-styled matter came to be heard for trial before a panel of twelve jurors. [*See* Dkt. Nos. 147, 151-52 & 153-54]. After a four-day trial, the jury ruled in favor of Plaintiff El Pollo Loco, S.A. de C.V. and against Defendant El Pollo Loco, Inc. [Dkt. No. 157]. The parties appeared before this Court for a hearing on October 31, 2007 to determine proper judgment. [*See* Minute entry of 10/31/07 & Dkt. No. 178]. At the hearing, Plaintiff addressed Defendant's argument that both Texas and Mexican law prohibit double recoveries by stating that it elected "to disregard the damage finding under the breach of contract of $1,087,500.00 and [accept] judgment on the damages awarded by the jury on the illicit acts." [Dkt. No. 178-1 at 6]. Plaintiff clarified that by doing so it was not conceding or abandoning its claim that there was a material breach of the agreement. [*Id.* at 7].

1

Throughout this dispute, Mexican law has governed Plaintiff's substantive claims.  [*See* Dkt. No. 22 at 6-8].  On November 3, 2004, the Court determined that the choice of law clause in the 1996 Intellectual Property Acquisition Agreement ("the Agreement")—selecting Mexican law to govern all disputes arising "in connection with the performance of [the] agreement"—was valid.  [Dkt. No. 22 at 2, 4-6].  Consequently, the Court concluded that "Mexican law applies to all of Plaintiff's claims."  [*Id.* at 6].  While it was clear to the Court that the choice of law clause plainly governed Plaintiff's contract claims, it determined that even if the choice of law clause did not apply to Plaintiff's tort claims, application of Texas choice of law rules would allow Mexican law to govern the tort claims as well.  [*Id.*].  Accordingly, on November 13, 2007, the Court ordered the parties to provide briefing on whether the prevailing party is entitled to attorneys' fees under Mexican substantive law.  [Dkt. No. 179].

On November 30, 2007, this Court issued a final judgment in favor of Plaintiff and against Defendant.  [Dkt. No. 183].  The Court declared that pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, Defendant materially breached the Agreement, as found by the jury at trial.  [*Id.* at 1].  Furthermore, the Court ordered the following: (1) that Defendant shall cease and refrain from using the Intellectual Property assigned under the Agreement and assign it to Plaintiff; (2) that Plaintiff shall recover damages from Defendant in the total amount of Twenty Million Two Hundred Fifty-One Thousand and no/100 Dollars ($20,251,000.00);[1] and (3) that Plaintiff is entitled to recover attorneys' fees from Defendant.  [*Id.* at 2-3].

---

[1] This amount represents Ten Million One Hundred Twenty-Five Thousand Five Hundred and no/100 Dollars ($10,125,500.00) of compensatory damages for actual damages directly and immediately attributable to Defendant's illicit acts and Ten Million One Hundred Twenty-Five Thousand Five Hundred and no/100 Dollars ($10,125,500.00) for damages caused to Plaintiff's decorum, honor, reputation, image, or public perception in the opinion of others. [Dkt. No. 183 at 2].

In its brief, Plaintiff claims that it is entitled to an award of attorneys' fees pursuant to the Mexican Federal Civil Code.  [Dkt. No. 180-1 at 1, 2].  Conversely, while Defendant agrees that Mexican law governs the appropriate award of attorneys' fees, [Dkt. No. 189-1 at 13], it argues that under the substantive law of Mexico, Plaintiff is not entitled to such a recovery because (1) Plaintiff elected not to recover fees for breach of contract—the only claim-specific rule that permits an award of attorneys' fees under Mexican substantive law, [Dkt. No. 181-1 at 4-5, 10-11]; (2) Plaintiff has not yet succeeded on appeal, which is the only scenario under Mexican law where recovery of fees is permitted, [*Id.* at 7, 8, 11]; and (3) the provisions in the Mexican codes allowing for attorneys' fees are not part of the substantive law giving rise to the claim.  [*Id.* at 7-9, 11].

The Court finds that Defendant's arguments are without merit.  Thus, in this Order, the Court sets forth its grounds for awarding attorneys' fees to Plaintiff, and declares that under Mexican law, the award shall be in the amount of Two Million Twenty-Five Thousand One Hundred and no/100 Dollars ($2,025,100.00) for proceedings in the trial court and One Million Six Thousand Two Hundred Fifty and no/100 Dollars ($1,006,250.00) for proceedings in the appellate courts, should the case be appealed and Plaintiff prevail on appeal.

## II.   DISCUSSION

Given that resolution of the issue at hand requires a detailed analysis of Mexican law, the Court will present a brief overview of the relevant Mexican codes and their applicability before delving into the merits of the parties' claims.

A.      Conflicts of Laws within Mexican Law

Mexico, whose government is structured according to a federal system, inherited its legal system from the civil law tradition, which includes statutes (*leyes* or *estatutos*) and codes[2] (*códigos*) adopted by the Mexican Congress and state legislatures.  ZAMORA, COSSIO, ET AL., MEXICAN LAW 81 (Oxford Press, 2005) (hereinafter "ZAMORA").  In Mexico, codes are intended to be definite and self-sufficient bodies of law.  *Id.*  The Federal Civil Code (*Código Civil Federal*) and the Federal Code of Civil Procedure (*Código Federal de Procedimientos Civiles*) are two of Mexico's major federal codes and the most relevant to the issue of attorneys' fees.  The Mexican federal system is divided into two judicial systems—federal and state.  *Id.* at 324.  Consequently, the federal government, the Federal District,[3] and the thirty-one states each have their own set of civil and procedural codes.  *Id.* at 82, 324.

1.      *The Federal Civil Code*

The Federal Civil Code is the core of Mexican Civil Law and occupies a salient place within Mexico's legal system.  *See* JORGE A. VARGAS, MEXICAN LAW:  A TREATISE FOR LEGAL PRACTITIONERS AND INTERNATIONAL INVESTORS (Chap. 1) Vol.1, West Group (1998), at 18-22.  Every Mexican state, and the Federal District, has its own civil code, which is a virtual copy of the Federal Civil Code.  *Id.*  The Federal Civil Code is the most important code regarding civil matters and governs throughout the entire country because it (1) directly applies to federal matters throughout Mexico; (2) acts as a supplement for the Commercial Code; (3) acts as an

---

[2]   The civil and procedural codes for each of the Mexican states and for the federal courts may be found at http://info4.juridicas.unam.mx/adprojus/leg/ (last visited, Jan. 10, 2008).  However, this website only provides the codes in Spanish.  Unless otherwise noted, all translations are the Court's.

[3] The "Federal District" is essentially Mexico City, the capital city of Mexico, and commonly abbreviated as D.F. (*Distrito Federal* in Spanish).  *See* Const. art. 44, *available at* www.ilstu.edu/class/hist263/docs/1917const.html ("The Federal District shall embrace its present territory, and in the event of the removal of the federal branches to some other place, it shall be erected into the State of Valle de México, with such boundaries and area as the General Congress shall assign to it.").

essential gap filler in all cases involving an application of federal law; and (4) has served as a model for most of the state civil codes, including the Civil Code of Mexico City.   Julio Romanach, Jr., *Introduction* to FEDERAL CIVIL CODE OF MEXICO, at i (Lawrence Publishing Company) (2003).

The Federal Civil Code is made up of four books:  persons and their legal relationships (Book One); property rights—both personal and real property (Book Two); inheritance (Book Three); and obligations—contractual and extracontractual (Book Four).  *See* Fed. Civ. Code; ZAMORA at 453.  The most relevant to the issue at hand is Book Four, which includes obligations stemming from the following six categories:  contracts, unilateral declarations of consent, unjust enrichment, business management, unlawful acts—both intentional and negligent (i.e. torts), and employment liability for worker safety.  "[I]n the Mexican federal legal system, the law of obligations is governed by the civil code applicable to the particular state or federal jurisdiction in which an obligation arises,[4] with the Federal Civil Code applicable to federal matters throughout the country."[5]  ZAMORA at 505.

In Mexico, federal law governs intellectual property matters.  Congress enacted the Law of Industrial Property (*Ley de Propiedad Industrial*) (hereinafter "LPI") in 1991, which regulates, among other things, all contracts related to trademarks, including agreements to license marks or franchises.  *See* LPI, pmbl., arts. 136, 142, & 142 Bis.  Under the Agreement, Plaintiff agreed to transfer and assign certain trademark rights, franchise agreements, and license

---

[4] An obligation typically arises in the place where the contract was entered into.  ZAMORA at 505.  In this case, it is unclear where the parties formulated, signed, or officially entered into the Agreement.

[5] In Mexico, federal jurisdiction falls into two categories:  *amparo* jurisdiction ("the procedural device used in federal courts to challenge the constitutionality of acts of federal and state officials," ZAMORA at 96) and "other cases involving subject matter assigned by the Constitution or by federal law to the federal courts."  *Id.* at 212.  While civil matters are inherently local, the Federal Civil Code explicitly states that "the provisions of this Code shall govern in the entire republic in federal matters."  Fed. Civ. Code art. 1.

agreements to Defendant.[6]  [Dkt. No. 1 at 39].  Thus, because the Agreement concerned intellectual property issues, which federal law governs, the Court will rely on the Federal Civil Code to resolve this dispute.  However, under Article 28 of the Federal Civil Code, "*personas morales* (i.e. legal entities, such as corporations) shall be governed by the corresponding laws (of their place of incorporation), and by their articles and rules." ZAMORA at 681.  According to the Agreement, Plaintiff's principal place of business is in the State of Nuevo Leon.  [Dkt. No. 1 at 37].  Thus, where local codes apply, the Court will analyze the issue at hand under the laws of the Nuevo Leon.

### 2.    *The Federal Civil Procedure Code and Local State Codes*

The Mexican Federal Civil Procedure Code is akin to the Federal Rules of Civil Procedure in the American legal system and is the primary code regulating procedural matters in Mexico.  Because the federal and state judicial systems in Mexico coexist, there are thirty-three codes of civil procedure in effect: "one for the courts of each state, one for the courts of the Federal District, and one for the federal courts throughout the country (the Federal Code of Civil Procedure)." ZAMORA at 324.  While there are no major overall differences in the content of these codes, there are existing significant variations that directly relate to the issue of attorneys' fees, thus making choice of law critical to the Court's analysis.

In its brief, Defendant relies on the 1932 Code of Civil Procedure of the Federal District to argue that the Court should not award attorneys' fees.  However, while this code may have served as a national model for the majority of state civil procedural codes, including the local territorial codes of the Federal District, it is inapplicable to this case.  Defendant claims that the

---

[6] In consideration thereof, Defendant agreed to "undertake to open a minimum of twenty-five (25) new franchises or company-owned stores for operation in Mexico within ten (10) years from the execution date of [the] Agreement." [Dkt. No. 1 at 39].  Defendant also agreed to take all commercially reasonable efforts to maintain and enforce the trademark rights in Mexico, ensure that the trademark lost none of its value in the Mexican marketplace, and exploit the trademark in Mexico.  [*Id.*].

various local procedural codes in Mexico "follow the provision permitting the award of attorneys' fees in the Code of Civil Procedure of the Federal District (Mexico City)." [Dkt. No. 181-1 at 11 (citing affidavit of Mexican law expert Claus von Wobeser (hereinafter "von Wobeser") at Dkt. No. 181-2 ¶ 21)]. According to von Wobeser, the reason for this is that "the Codes of the rest of the States followed the same system established originally by these two codes, so they all resemble each other." [Dkt. No. 181-2 ¶ 21]. However, von Wobeser provides no legitimate support for his statement. [*See* Dkt. No. 181-2 ¶ 21]. In fact, he cites to Articles 139 and 140 of the Code of Civil Procedure of the Federal District as an example, but provides only his interpretation of what these Articles mean without presenting them in reference to other potentially comparative provisions from other jurisdictions. [*See id.* ¶ 22].

Moreover, it is surprising to this Court that the parties did not even mention Nuevo Leon as a potential relevant code and that Defendant relied so heavily on the Federal District's procedural code when this case has no connection whatsoever to Mexico City—the dispute did not arise there, neither party is from there, the case was not tried there, and as far as the Court is aware, none of the El Pollo Loco stores in question in this case are located there. Furthermore, a simple comparison between the procedural codes of the Federal District and Nuevo Leon reveals that the provisions relevant to an award of attorneys' fees differ significantly.[7] *Compare* the Federal District's Civil Procedure Code (hereinafter "D.F. Civ. P. Code") arts. 138-142, *with* Nuevo Leon's Civil Procedure Code (hereinafter "N.L. Civ. P. Code") arts. 88-97. The Federal District's Civil Procedure Code also approaches court costs differently from the Federal Civil Procedure Code and several state codes. An article from the Connecticut Journal of International law highlights some of these inherent dissimilarities:

---

[7] A more detailed analysis of these differences follows below.

> [In Mexico, the] legally allowed expenses of the attorney for the prevailing party
> are to be reimbursed in all cases.  The Federal Code of Civil Procedures follows
> the criterion of those regimes that impose the payment of costs as a consequence
> of defeat (Art. 7).  The Federal District's Code of Civil Procedure, however, takes
> a less clear-cut approach.  It generally imposes costs when required by law and
> when the losing party has proceeded with temerity.  It also shifts costs in certain
> specific circumstances, including cases in which the losing party offers no
> evidence or false evidence on behalf of his claim, raises a claim clearly without
> merit, or delays the proceedings unnecessarily.  At any rate, it is understood in
> Mexico that the costs include attorneys' fees.

Angel R. Oquendo, *NAFTA's Procedural Narrow-Mindedness:    The Panel Review of Antidumping and Countervailing Duty Determinations Under Chapter Nineteen*, 11 Conn. J. Int'l L. 61, 105-06 (Fall 1995) (internal citations omitted) (referring mainly to Article 140 (IV) of the Civil Procedure Code of the Federal District).

Neither the procedural code of Nuevo Leon nor the Federal Civil Procedure Code share this approach.  In fact, the closest that the code of Nuevo Leon comes is Article 91, which states that "the party who does not obtain a favorable judgment on any of its claims as well as the party who loses the suit in its entirety on all claims against it will be bound to pay costs."  Therefore, because of the Federal District's irrelevance to this case and the inherent differences between the codes, this Court will not apply the provisions of the Code of Civil Procedure of the Federal District or rely on them to resolve any part of this dispute.  Rather, where the analysis calls for a local code, the Court will apply the Civil Procedure Code of the State of Nuevo Leon.

### B.      Attorneys' Fees Under Mexican Law

Having established that the applicable codes to the issue of attorneys' fees are the Federal Civil Code, the Federal Rules of Civil Procedure, and the Code of Civil Procedure of Nuevo Leon, the Court will now discuss Plaintiff's entitlement to such fees according to those codes. Under Mexican law, the prevailing party in a suit is entitled to attorneys' fees:  "The losing party

must reimburse procedural costs (*costas*) to its adversary."[8]  Fed. Civ. P. Code, art. 7.  Similarly, "[p]ayment of court costs (*gastos judiciales*) shall be made by the party that failed to perform its obligations, and shall be made in accordance with the provisions of the Code of Civil Procedure."  *See* Fed. Civ. Code, art. 2118; N.L. Civ. Code, art. 2012.

Defendant argues that in a federal diversity case, an award of fees "is confined to two situations:  (1) where under the restrictive American rule,[9] attorneys' fees are allowed; and (2) where *controlling substantive law* permits recovery."  [Dkt. No. 181 at 2 (citing *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 216 (5th Cir. 1998))].  According to Defendant, because there is no applicable exception to the American rule, the remaining question is "whether the controlling substantive law—here, the substantive law of Mexico—permits the recovery of attorneys' fees." [Dkt. No. 181 at 2].  Defendant concludes that the substantive law of Mexico does not permit the recovery of attorneys' fees for three reasons:  First, "the only claim-specific rule that permits the award of attorneys' fees under Mexican substantive law applies only to breach of contract actions" and because Plaintiff "elected not to recover on that claim," it cannot recover fees for breach of contract.  [*Id.* at 4].  Second, while the various Mexican codes permit the recovery of fees, "they do so only if the losing party takes an unsuccessful appeal," which Plaintiff has not yet undertaken.  [*Id.*].  Third, the provisions in the Codes of Civil Procedure that allow for attorneys' fees are rules of general application, are inherently procedural, and are consequently not part of the substantive law giving rise to the claim.  [*Id.* at 5, 7].  The Court will address each of Defendant's arguments in turn.

---

[8] Procedural costs are defined as those costs that the prevailing party expended in the course of litigation—minus any superfluous expense—in the amount that the Court calculates pursuant to the provisions of the applicable fee tariff schedule (*Arancel*).  Fed. Civ. P. Code art. 7.  *See also infra* at 30 (Arancel de Abogados de Nuevo Leon art. 5, stating that judicial costs include attorneys' fees as well as other costs derived from the proceeding).

[9] Under the American Rule, attorneys' fees must be borne by each litigant absent an agreement or statutory authority to the contrary.  *See Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006).

1.      *Defendant's Claim that No Available Substantive Law Allows Recovery of Attorneys' Fees*

Defendant argues that the only claim-specific rule under the controlling substantive law that would justify an award of attorneys' fees is Article 2118 of the Federal Civil Code, which states that "the party who breaches an obligation must pay judicial costs, according to the provisions of the Code of Civil Procedure."  [*See id.* at 8, 9, 14-15].  However, because Plaintiff has elected not to recover for breach of contract, Defendant avers that Plaintiff is not entitled to recover attorneys' fees on this claim.  [*Id.* at 9].  Defendant is wrong.

As stated above, Book Four of the Federal Civil Code deals with contractual and extracontractual obligations.  Thus, while Defendant is correct that Article 2118 provides for attorneys' fees in case of a breach of a contractual obligation, it is incorrect in excluding extracontractual obligations—which include illicit acts—from its scope.

a.      **Mexican Substantive Law Entitles a Party Who Prevails on a Claim for Illicit Acts or Moral Damages to Recover Attorneys' Fees**

Defendant argues that Mexican substantive law does not confer a right to recover attorneys' fees on a party who prevails on a claim for illicit acts or moral damages because "the Code provisions imposing extracontractual liability for illicit acts and moral damages do not contain any provisions authorizing the award of attorneys' fees."  [*Id.* at 9].  While Defendant correctly observes that the language of those provisions does not directly address attorneys' fees, it draws an incorrect inference by failing to (1) consider the organization of the Code; and (2) recognize the relationship between the different provisions within it—both of which contradict Defendant's overall conclusion.

Defendant first cites to Article 2118 of the Federal Civil Code, which provides that "judicial costs shall be paid by the party breaching an *obligation* in accordance with the

10

provisions of the Code of Civil Procedure."  [*Id.* at 8 (emphasis added)].  It then contrasts Article 2118 with the provisions in the Federal Civil Code addressing illicit acts and moral damages—Articles 1910, 1915, 1916, and 1916 Bis—and points out that unlike Article 2118, those provisions do not contain language authorizing an award of attorneys' fees.  [*Id.* at 9-10].  From this cursory analysis Defendant then concludes that because attorneys' fees are not spelled out in the Federal Civil Code's substantive discussion of illicit acts and moral damages as they are in Article 2118, these provisions do not provide for attorneys' fees at all.  [*Id.*].

This is an incorrect interpretation of the Federal Civil Code, beginning with Defendant's oversight of the code's basic structure.  In Mexico, "each rule must be read in relation to other rules, and to its position in the Code."  ZAMORA at 456-57.  "The Civil Code is a highly structured collection of rules, reflecting the mentality of the Code's drafters . . . and their efforts to organize the rules according to an internal logic compelled by the understanding of civil law as a legal science."  *Id.* at 456.  Accordingly, "the 3,074 Articles in the Federal Civil Code are arranged into four books (*libros*), which are in turn divided into several titles (*títulos*), with each title further subdivided into numerous chapters (*capitulos*)."  *Id.*  Rules pertaining to the performance of contracts and extracontractual obligations are contained in Book Four (*Obligaciones*), which is divided into three parts:  Part One (Obligations in General); Part Two (Of the Different Types of Contracts); and Part Three (Creditors' Preferences).  Part One is the most relevant to this dispute and is divided further into six titles, two of which are applicable here:  Title One (general rules of contract and tort law) and Title Four (effects of obligations in general and the consequences of nonperformance).

In the Mexican legal system, contract law is regarded as only *one* branch of obligations.  *Id.* at 504.  "Obligations are viewed as stemming not only from contracts voluntarily entered

into, but also from . . . negligent or intentional misconduct . . . ."  *Id.*  In other words, Article

2118 of the Federal Civil Code is a substantive provision that applies to all obligations

independent of their source; that is, whether they are generated by a contract or by an

extracontractual obligation derived from an illicit act that may result in damages—moral or

otherwise.  Thus, while Defendant correctly asserts that Article 2118 covers breach of contract

actions, it is wrong in limiting its scope to contractual obligations.  In short, Defendant errs by

asserting that the Articles in Title One, covering obligations borne out of illicit acts, have no

relation whatsoever to the Articles in Title Four, addressing the consequences of a breach of the

obligations in Book Four as a whole.  Consequently, under Mexican substantive law, Plaintiff is

not precluded from recovering attorneys' fees on its successful claim for illicit acts and moral

damages.

> **b.  Under Mexican Law A Prevailing Party May Recover Attorneys' Fees Even if Not Awarded Monetary Damages for Breach of Contract**

Defendant cites to the Supreme Court of Texas in support of its argument that Plaintiff is

not entitled to recover attorneys' fees on its breach of contract claim because it elected not to

recover damages for breach of contract.  [*See* Dkt. No. 181-1 at 9].  Defendant avers that

"[w]hile [a plaintiff] could certainly plead more than one theory of liability, [plaintiff] could not

recover on more than one."  [*Id.* (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299,

303 (Tex. 2006))].  Defendant once again relies on the wrong law to advance its argument, which

is surprising given that Defendant itself recognized that Mexican law, and not the law of Texas,

controls the award of attorneys' fees.  [*See* Dkt. No. 189-1 at 11].  Nevertheless, for reasons

stated elsewhere in this opinion, Plaintiff's election to forgo its breach of contract damages does

not preclude it from recovering attorneys' fees.

2. **Defendant's Claim that Under Mexican Law, Recovery of Attorneys' Fees is Limited to a Losing Party's Unsuccessful Appeal**

Defendant also argues that "the Codes of Civil Procedure cannot support an award of fees at this stage of the proceeding," [Dkt. No. 181-1 at 11], because "although the various Codes of Civil Procedure of the Mexican judicial system and each of the Mexican States permit the recovery of fees, they do so *only if* the losing party takes an unsuccessful appeal, and are awarded without regard to the applicable underlying substantive law."  [*Id.* at 8 (relying on von Wobeser's interpretation of Article 140 (IV) of the Code of Civil Procedure of the Federal District) (Defendant's emphasis)].  Defendant is wrong for three reasons:  (1) as stated above, the law of the Federal District does not apply to this case; (2) even if Article 140 was applicable here, Defendant's interpretation of it is incorrect and inconsistent with Mexican jurisprudence; and (3) Article 90 of the Code of Civil Procedure of Nuevo Leon specifically authorizes recovery of attorneys' fees upon a court's final judgment.

a. **Applicability of Article 140 of the Civil Procedure Code of the Federal District to this Case**

As stated above, the Civil Procedure Code of the Federal District is irrelevant and inapplicable, and Defendant's reliance on it is therefore misplaced.  Again, if Defendant wished to invoke a local code, it should have offered the Civil Procedure Code of Nuevo Leon—or even the codes of the Mexican states covered by the Agreement—before considering that of the Federal District.[10]  Furthermore, the codes themselves contradict Defendant's suggestion that the Civil Procedure Code of the Federal District is a replica of the other codes throughout Mexico—

---

[10] Pursuant to the Agreement, "EPL-USA grants to EPL-Mexico an exclusive, royalty-free license for the term of this Agreement to use within the Territory specified in Schedule A all of the Intellectual Property and Trade Practices including any intellectual property or trade practices developed by EPL-USA . . . ." [Dkt. No. 1 at 39]. Schedule "A" of the Agreement specifies the "Territory Licensed Pursuant to Section 6.d" as follows:  "The geographical territory of the states of Nuevo Leon, Mexico, and Coahuila, Mexico, and the cities of Nuevo Laredo, State of Tamaulipas, Mexico, and Gomez Palacio, State of Durango, Mexico."  [*Id.* at 46].  Note that the Federal District is nowhere on this list.

neither the Federal Civil Procedure Code nor the Civil Procedure Code of Nuevo Leon share a

provision identical or even similar to that of Article 140. *See* N.L. Civ. P. Code arts. 88-97; Fed.

Civ. P. Code ch. 2 (covering the procedural rules for court costs).

> **b.   Defendant's Interpretation of Article 140 of the Civil Procedure Code of the Federal District**

Even if the law of Federal District did apply, Defendant's interpretation of Article 140

(IV) and its accompanying conclusion is incorrect.  Article 140 provides in relevant part:

> A party shall be obliged to pay costs when the law establishes said obligation, or when at the judge's discretion said party has conducted itself with temerity or bad faith.
>
> A party shall always be condemned to pay costs when:
>
> I.      It fails to submit any evidence to justify its action or defence if the underlying facts are disputed.
>
> II.     It files false documents or presents to the Court bribed witnesses.
>
> III.    . . .
>
> IV.     Two judgments are entered against it, which are identical in its resolute part, without taking into consideration the declaration regarding costs.  In such a case, the order to pay costs shall include the costs of both instances.[11]

Defendant interprets subsection IV to mean that "fees are only imposed if a party loses in

'the second instance'—that is, upon an unsuccessful appeal."  [Dkt. No. 181-1 at 12].  This

interpretation is incorrect.  Article 140 states that "a party shall always be condemned to pay

costs when" and then enumerates seven situations calling for a mandatory award of costs.

Defendant treats these situations as the sole and exclusive situations in which a Court is able to

award attorneys' fees.  However, a careful reading of this Article reveals that these scenarios are

not limitations but rather situations which, were they to arise, would result in a mandatory award

---

[11] Two "instances" refer to a case before the trial court (*primera instancia*) and appellate court (*segunda instancia*).

14

of court costs.  Nowhere in the Article does it say that costs will be awarded "only" in those situations.  In other words, Article 140 establishes a general rule permitting recovery of costs and then sets out certain situations—that are not exclusive but merely demonstrative—where an award of court costs would necessarily follow.  In other words, while an award of attorneys' fees would in fact be mandatory if a losing party unsuccessfully appeals the trial court's judgment, a court would not be precluded from awarding attorneys' fees if this particular situation did not arise.

Furthermore, Defendant's interpretation of Article 140 is inconsistent with Mexican jurisprudence.  In one of its opinions, the Mexican Supreme Court stated that a court must order payment of attorneys' fees in both the "first and second instance."   COSTAS. INTERPRETACION DE LA FRACCION IV DEL ARTICULO 140 DEL CODIGO DE PROCEDIMIENTOS CIVILES PARA EL DISTRITO FEDERAL,[12] Pleno de la Suprema Corte de Justicia [S.C.J.N.] [Supreme Court], Semanario Judicial de la Federación, Octava Época, tomo VIII, Noviembre de 1991, Tesis Aislada 2826/91, Pagina 193, Registro No. 221345 (Mex.). Thus, a decision by the Mexican Supreme Court ordering payment of costs at both the trial and appellate level—not only by the losing party who has lost both times, but also by the party that loses in *either one of them*—indicates that the interpretation of Article 140 that Defendant suggests is incorrect.

Similarly, as Plaintiff's Mexican law expert Felipe de Jesus Torres Gonzalez (hereinafter "Torres") points out, a Mexican appeals court held that a lower court violated Civil Code Article 2118 by not awarding attorneys' fees to the prevailing party.  [Dkt. No. 180-2 at 4-5 (citing COSTAS, CONDENACION A SU PAGO, EN CASO DE INCUMPLIMIENTO DE

---

[12] The case name is translated as follows:  "COSTS.  INTERPRETATION OF SECTION IV OF ARTICLE 140 OF THE CODE OF CIVIL PROCEDURE FOR THE FEDERAL DISTRICT."

OBLIGACIONES CONTRACTUALES (CONTRATO DE OBRAS),[13] Pleno de la Suprema Corte de Justicia [S.C.J.N.] [Supreme Court], Semanario Judicial de la Federación, Quinta Época, tomo CIII, Febrero de 1950, Tesis Aislada, 9303/48, Pagina 1340, Registro No. 344220 (Mex.)].  In that case the Court ruled that "if the lower court resolved not to make a special award for court costs, notwithstanding that [the Judge] declared as rescinded the construction agreement executed between the parties due to the defendant's non-fulfillment, then [the Judge] incurred a manifest infringement of Articles 2118 of the Civil Code for the Federal District and Territories and 140 of the Civil Procedures Code."  [*Id.*].  Article 140 provides that "the payment of legal costs will be paid by the one who doesn't fulfill the obligation and that the award of legal costs will be made when the law requires it."  [*Id.*]  Consequently, if an appeals court declares that an infringement occurred when the lower court did not award attorneys' fees, then it cannot be the case that such awards can only be given on appeal.

Finally, in its Response to Plaintiff's Application for Attorneys' Fees and Related Non-Taxable Expenses, Defendant contradicts itself by referring to the attorneys' fee tariff for the Federal District, which provides different percentages of recovery for proceedings in the trial court and for appellate proceedings.  [Dkt. No. 189-1 at 15 (citing Post Trial Declaration of Mexican law expert Cesar de la Garza's (hereinafter "de la Garza Decl.") reference to Article 128 of the Federal District Supreme Tribunal of Justice Organization Act)].  Article 128 provides three different percentages for costs in the first instance and for a 2% increase on the preceding tariffs "[i]f the matter is resolved through a second instance."  [*See* Dkt. No. 189-2 at ¶8].  If Mexican law truly limited recovery of attorneys' fees to a losing party's unsuccessful appeal,

---

[13] The case name is translated as follows:  "LEGAL COSTS, AWARD FOR THEIR PAYMENT, IN CASE OF UNFULFILLMENT OF CONTRACTUAL OBLIGATIONS (CONSTRUCTION AGREEMENT)."

there would be no reason for the tariffs to specify a set percentage of recovery for costs in the first instance and a distinct percentage increase for the second instance.

> c.   **Article 90 of the Code of Civil Procedure of Nuevo Leon Specifically Authorizes Recovery of Attorneys' Fees upon the Final Judgment of Any Court**

Article 90 of the Code of Civil Procedure of Nuevo Leon states that "in any final or interlocutory judgment pursuant to matters of an adversarial nature, an award of attorneys' fees will be made as a matter of course . . . " to the prevailing party.  The Court's judgment in favor of Plaintiff and against Defendant on November 30, 2007 was final.  [*See* Dkt. No. 183].  Thus, under Article 90, the Court does not need to wait for resolution on appeal in order for it to award attorneys' fees.

Furthermore, none of the relevant federal or procedural rules relating to court costs mentions or even suggests that an appeal is necessary before attorneys' fees may be awarded.  If such a requirement did in fact exist, it seems logical that Article 7 of the Federal Civil Procedure Code, which provides that "the losing party must reimburse the opposing party for procedural costs," would at the very least allude to such a prerequisite.  However, neither Article 7, nor any other Article within the code suggests the existence of such a requirement.  In fact, Article 90 of the procedural code of Nuevo Leon states the opposite.  Therefore, because the procedural code of Nuevo Leon directly contradicts Defendant's contention and no other relevant provision supports its claim, the Court concludes that under Mexican law, recovery of attorneys' fees is not limited to a losing party's unsuccessful appeal.

3. ***Defendant's Argument that Plaintiff Cannot Recover Attorneys' Fees Because the Provisions Permitting an Award of Attorneys' Fees in the Code of Civil Procedure are Inherently Procedural***

Finally, Defendant argues that while the various civil procedure codes in Mexico contain provisions authorizing an award of attorneys' fees against a party who brings an unsuccessful appeal, these provisions are procedural and inapplicable to this case because (1) they are laws of general application that are not part of the substantive law creating the liability, and (2) they conflict with Rule 38 of the Federal Rules of Civil Procedure. [Dkt. No. 181-1 at 11]. The Court will now discuss why each of these arguments fails.

a. **Defendant's Claim that Mexico's Procedural Codes Allowing Attorneys' Fees Conflict with Rule 38 of the Federal Rules of Appellate Procedure**

According to Defendant, the Mexican Codes of Civil Procedure are inapplicable to this proceeding because "the Codes' fee-shifting rules conflict with Rule 38 of the Federal Rules of Appellate Procedure." [*Id.* at 13]. Defendant again reminds the Court that "[t]he Codes do *not* authorize an award of fees against a party who loses in the first instance, or in the trial court," but *only* after an unsuccessful appeal. [*Id.* at 14 (citing von Wobeser's interpretation of the Civil Procedure Code of the Federal District)]. Defendant then contrasts this with Rule 38, which permits awards only for frivolous appeals, "reflecting the U.S. federal policy that litigants in the U.S. federal court have the right to bring a non-frivolous appeal without fear of punishment." [*Id.*]. Defendant then concludes that the Mexican codes are not substantive, do not trump the Federal Rules of Appellate Procedure, and are therefore inapplicable. [*Id.*].

The Court now reminds Defendant that the Federal District's Code of Civil Procedure from which Defendant derives its conclusion is in fact inapplicable—not because of its conflict with Rule 38, but because it is simply irrelevant to this case. Additionally, as stated above, the

18

Civil Procedure Code of Nuevo Leon does not contain a provision akin to Article 140 of the procedural code of the Federal District.  However, even if it did, or even if the Federal District's code somehow applied here, Defendant's conclusion that Mexican law limits recovery of attorneys' fees to the appellate level is simply wrong, thereby negating the existence of a contrary federal rule.

> **b.** **Defendant's Claim that Mexico's Procedural Codes Allowing Attorneys' Fees are Not Part of the Substantive Law Creating Liability**

> > *(i)* *Defendant's Argument that the Mexican Code Provisions Authorizing Attorneys' Fees are Rules of General Application and Thus are Inherently Procedural*

According to Defendant, Mexican procedural codes allow attorneys' fees in all civil cases, without regard to the nature of the underlying claim, thereby making them inherently procedural.  [*Id.* at 12].  Defendant again cites to von Wobeser's interpretation of Article 140 of the Federal District's procedural code to support its contention which, as stated above, is inapplicable to this case.  Defendant then introduces the purpose for which attorneys' fees are awarded in Mexico as "further confirmation of the procedural nature of the fee-shifting rule in the Mexican Civil Procedure Code"—that fees are only imposed if a party loses on appeal.  [*Id.*].  Defendant further states that attorneys' fees "are awarded without regard to whether the appellant had a good faith basis for the appeal, but rather are designed to punish the party for its boldness in failing to concede defeat after losing in the trial court, and forcing the prevailing party to litigate in the court of appeals."  [*Id.* at 12 (citing von Wobeser's interpretation of GASTOS Y COSTAS.  LA CONDENA A SU PAGO NO ESTA SUPEDITADA A QUE SE HAYA RESUELTO EL FONDO DEL ASUNTO (LEGISLACION DEL ESTADO DE

SONORA),[14] Pleno de la Suprema Corte de Justicia [S.C.J.N.] [Supreme Court], Semanario Judicial de la Federación y su Gaceta, Novena Época, tomo XVI, Agosto de 2002, Tesis: V.3° 11 C 833/2001, Pagina 1297, Registro No. 186253 (Mex.) at Dkt. No. 181-2 ¶¶ 20, 21, 27)]. Defendant's reliance on this case and subsequent conclusion is incorrect on many levels.

First, as stated above, attorneys' fees in Mexico are awarded at the trial level, so Defendant's conclusion that they are limited to an unsuccessful appeal is the result of a misplaced application of the law, and of an incorrect interpretation thereof.  Second, Defendant again relies on an inapplicable source of law.  While Defendant states that the aforementioned case is an "interpretation of Article 141 (*l*) of the Code of Civil Procedures of the State of Baja California," [Dkt. No. 181-2 at 13], this case in fact analyzes Articles 80 and 18 of the Civil Procedure Code of the State of Sonora, and makes no reference to Article 141 (*l*) of the State of Baja California.  In any event, while the Mexican Supreme Court's interpretation of a particular provision may be binding on states whose code includes such provisions, this case has no bearing on the issue at hand because neither the Civil Procedure Code of Nuevo Leon nor the Federal Code of Civil Procedure contain provisions similar to either Article 80 or 18 of the Civil Procedure Code of Sonora.  As such, Defendant's reliance on this case is misplaced.

### *(ii)* *"Procedural" Versus "Substantive" Distinction for* **Erie** *Purposes*

Defendant avers that *Erie*'s distinction between substance and procedure applies only when there is no contrary federal rule.  [Dkt. No. 181-1 at 13 (citing *Exxon Corp. v. Burglin*, 42 F.3d 948, 953 (5th Cir. 1995) ("Where . . . a federal procedural rule is clearly applicable, then it applies unless unconstitutional or outside the scope of the Rules Enabling Act."))].  Defendant

---

[14] The case name is translated as follows:  "COSTS AND FEES.  A JUDGMENT FOR THEIR AWARD IS NOT SUBJECT TO THE RESOLUTION OF THE HEART OF THE MATTER (LEGISLATION OF THE STATE OF SONORA)."

advances this argument by stating that "[i]f the [federal] Rule speaks to the point in dispute and is valid, it is controlling, and no regard need be given to contrary state provisions."   [*Id.*]. Having determined that there is no contrary federal rule, *Erie*'s distinction between substance and procedure applies.   Pursuant to the analysis of *Erie* and its progeny, as described below, the Mexican procedural codes that entitle Plaintiff to attorneys' fees are applicable to this case. Defendant is correct that in light of the American Rule, courts should only apply state attorneys' fee law when it "embodies a substantive policy."   *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 51-52 (1991).   However, Defendant is incorrect in stating that Mexican law provisions awarding attorneys' fees are procedural and inapplicable to this case because they are laws of general application that are not part of the substantive law creating the liability.   [*See* Dkt. No. 181 at 11].

        The U.S. Supreme Court has explained that substantive fee-shifting statutes include those "which permit[] a prevailing party in certain classes of litigation to recover fees."   *Chambers*, 501 U.S. at 52.   The *Chambers* Court made a distinction between laws requiring fee awards for prevailing parties versus those providing for fees due to an opponent's bad-faith litigation tactics, identifying the former as substantive and the latter as procedural.   *Id.* at 52-53.   Fifth Circuit decisions following *Chambers* recognize that only fee-shifting statutes limiting fee awards to prevailing parties are substantive for *Erie* purposes.   For example, in *Ashland Chemical Inc. v. Barco Inc.*, the Fifth Circuit held that the fee-shifting rule at issue in that case was substantive because "unlike the imposition of bad-faith sanctions in *Chambers*, [the award was] tied to the outcome of the case." 123 F.3d 261, 265 (1997).   Under Mexican law, not only are attorneys' fees awarded to the prevailing party, but they are calculated based on a percentage of the total damages award, thereby tying recovery to the outcome of the proceedings.   Thus, pursuant to the

decision in *Chambers* and Fifth Circuit precedent, the fee-shifting statutes in Mexico are substantive for *Erie* purposes.  Moreover, the Fifth Circuit has made clear that "in an ordinary diversity case, state rather than federal law governs the issue of the awarding of attorneys' fees." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1487 (5th Cir. 1990) (stating that the direct authority that Fed. R. Civ. P. 54(d) grants district courts to award attorneys' fees "must be exercised within the bounds of applicable law").

Furthermore, under the *Erie* rule and its progeny, because no federal statute covers the point in dispute, the Court must apply Mexican law.  The case at hand presents a blurry line between the substantive and procedural nature of an award of attorneys' fees, particularly in light of the variety of laws and codes which this case has invoked.  Because the "distinctions between substance and procedure are inherently ephemeral and thus difficult to draw . . . the [U.S. Supreme Court] has struggled to provide criteria to determine when federal law may be used in diversity cases."  ERWIN CHEMERINSKY, FEDERAL JURISDICTION 327-28 (Aspen Publishers, Inc. 5th ed. 2007) (hereinafter "CHEMERINSKY").  The Supreme Court itself has recognized that "[t]he line between 'substance' and 'procedure' shifts as the legal context changes." *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).  In fact, "[e]ach implies different variables depending upon the particular problem for which it is used."  *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945).

Pursuant to the *Erie* doctrine and the Rules Enabling Act (28 U.S.C. § 2072), when a federal court has diversity jurisdiction over a state law cause of action, state substantive law— state court decisions and state statutes—and federal procedural law govern the action.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna*, 380 U.S. at 465 (1965).  Thus, determining whether a question is substantive or procedural in nature—a distinction that will govern the type of law that a federal court will rely on—does not depend on reference to a traditional or

common-sense substance-procedure distinction.  326 U.S. at 109.  To determine whether to use state or federal law in a situation where the line between substance and procedure cannot be easily drawn, the Court must pursue a three-part inquiry:  (1) whether there is a valid federal statute or federal rule of procedure on point; (2) whether the application of state law is likely to determine the outcome of the lawsuit; and (3) whether there is an overriding federal interest justifying the application of federal law.  CHEMERINSKY, at 328.  There will inevitably be unanswered questions at each step of the inquiry.  *Id.* at 337.  For this reason, "federal courts possess discretion to decide what constitutes an on point federal law in a particular case, when a state law is outcome determinative, and what federal interests outweigh the need to use state law."  *Id.* at 328.

> **(a)      Whether there is a Valid Federal Statute or Federal Rule of Procedure on Point**

If the Court determines that there is a valid federal statute or Federal Rule of Procedure on point, it must then apply the federal law, even if there is conflicting state law.  *Hanna*, 380 U.S. at 468 (1965); CHEMERINSKY, at 328.  As stated above, the American Rule requires parties to bear their own attorneys' fees, and a federal court may not award "attorney's fees to a prevailing party absent explicit statutory authority."  *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 861 (2001); *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994).  Congress has enacted numerous statutes that provide for attorneys' fees.[15] However, none of those statutes are "sufficiently broad to control the issue before the Court"— awarding of attorneys' fees in a case involving a breach of contract and illicit acts.  *See Stewart*

---

[15] Congress has authorized an award of attorneys' fees to the "prevailing party" in numerous statutes, such as the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e-5(k); the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 1973(e); the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988; and the Fair Housing Amendments Act of 1988 (FHAA), 102 Stat. 1619, 42 U.S.C. § 3601 *et seq.*, among others.

*Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-750 (1980).  Thus, because there is no valid federal statute on point, the Court must proceed to the second part of the inquiry to determine whether it should apply Mexican law.  In any event, under the Rules of Decision Act, state law must be applied only when there is no federal statute or constitutional provision on point.  *See* 28 U.S.C. § 1652; CHEMERINSKY, at 328.

**(b)      Whether the Application of State Law is Likely to be Outcome Determinative**

Once it has concluded that there is no valid statute or Federal rule, the Court must then ask whether the application of state law is likely to be determinative of the outcome of the lawsuit.  *York*, 326 U.S. at 109.  If so, state law governs.  CHEMERINSKY, at 333.  The question here is not whether a statute regarding an award of attorneys' fees is deemed a matter of "procedure" in some sense.  Rather, "[t]he question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced," or whether it is a matter of substance in that "it significantly affects the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court."  *York*, 326 U.S. at 109.  In *York*, the Supreme Court explained that "[a]s to consequences that so intimately affect recovery or non-recovery, a federal court in a diversity case should follow State law."  *Id.* at 110.

While the Court has already entered its final judgment, an award of attorneys' fees would be considered outcome determinative, thereby leading the Court to apply Mexican law.  As will be described in more detail below, attorneys' fees in Mexico are calculated pursuant to a percentage tariff scale, in which the amount of attorneys' fees depends on the amount of the final judgment in relation to a fixed variable.  Thus even if Mexican law characterizes the calculation of attorneys' fees as "procedural," because their relation to the final judgment determines the

amount of the award, the Court must follow state law.  *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 416 (1996) (stating that federal courts must follow state law because *Erie* "precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court"); *see also Angel v. Bullington*, 330 U.S. 183, 187-90 (1947) (although the state court characterized a state law preventing a mortgage holder from suing to recover unpaid sums after foreclosure of the mortgage as "procedural," the Supreme Court concluded that because it was outcome determinative, the federal rule was to follow the state law precluding the suit).

### (c)   Whether there is an Overriding Federal Interest Justifying the Application of Federal Law

Having determined that Mexican law is outcome determinative, the Court must ask whether there is an overriding federal interest justifying the application of federal law.  *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 538 (1958); CHEMERINSKY, at 328.  If state law is outcome determinative and there is no countervailing federal interest, then state law controls.  CHEMERINSKY, at 328.  Otherwise, the Court must apply federal law.  *Id.*  "The [Supreme] Court has done little in the years since *Byrd* to clarify what types of federal interests are sufficient to override the application of state law."  CHEMERINSKY, at 336-37.  Unlike the present case, "in *Byrd* and *Gasparini*, there was a constitutional interest involved—the Seventh Amendment right to jury trials in civil cases."  *Id.* at 337.  However, it is unclear what other interests justify the application of federal law over outcome determinative state legal principles. *Id.*  In this case, neither party has presented an overriding federal interest justifying the application of federal law—either on the issue of entitlement to attorneys' fees, or in their calculation.

Finally, in determining whether a federal court sitting in diversity must apply state law, the importance of a state rule is relevant, but only in the context of the goals of the *Erie* doctrine—to prevent forum shopping and the inequitable administration of justice. CHEMERINSKY, at 328.  In this case, the Court does not believe that applying the Mexican fee-shifting codes would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum state, or that their application would have so important an effect upon the fortunes of either party that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

Plaintiff correctly states that "all that is required under Mexican law in order for a plaintiff to be entitled to recover its attorneys' fees and costs is for the Plaintiff to prove that the Defendant breached the contract, and that local procedural laws will allow an award for Legal Costs." [Dkt. No. 180-1 at 2].  At trial, the jury found that Defendant breached the Agreement between the parties, and the Court entered judgment on that finding on November 30, 2007. Furthermore, having determined that the substantive and procedural codes within Mexican law are applicable in this case, the Court concludes that Plaintiff, as the prevailing party in this suit, is entitled to an award of attorneys' fees.

### D.    Award of Attorneys' Fees

#### 1.    *Plaintiff's Application for Fees*

Having determined that Plaintiff is entitled to attorneys' fees, the Court now turns to the appropriate amount of expenses and attorneys' fees that Defendant owes to Plaintiff in addition to the damage award.  Plaintiff seeks attorneys' fees incurred in the course of litigation in a total amount of Six Million Seven-Hundred-Fifty Thousand Three Hundred Thirty Three and 33/100 Dollars ($6,750,333.33) pursuant to Fed. R. Civ. P. 54(d)(2) and Local Rule 54.2.  [Dkt. No.

185-1 at 1, 3].   Plaintiff bases this amount on a contingency fee of 33 1/3 of the recovery,

arguing that "[t]he fees are reasonable based on a lodestar amount of $453,278.17 plus

consideration of the *Johnson* factors and the *Arthur Anderson* factors."   [*Id.* at 3].   Alternatively,

Plaintiff seeks "a multiplier of three times the lodestar amount" based on Texas law, determined

by multiplying a reasonable hourly rate by the number of hours reasonably spent on litigation.

[*Id.* at 3, 6].

      In its response to Plaintiff's Application for Attorneys' Fees, Defendant argues that

Plaintiff "invokes the wrong law, in order to recover an award of fees that is vastly in excess of

any amount to which it is even arguably entitled."   [Dkt. No. 189-1 at 11].   The Court agrees.

While the Mexican Federal Civil Code entitles the prevailing party to recover attorneys' fees,

Plaintiff's Mexican law expert Torres claims that "under Mexican law, the appropriate

mechanism for assessing Legal Costs is provided by the applicable procedural rules, which I

understand in this case to be Texas or federal Procedural rules."   [Dkt. No. 180-2 at 8].   This

contention is incorrect because under both the choice of law clause in the Agreement and Fifth

Circuit precedent, Mexican law—whose substantive law was applied to the underlying claims—

governs the award of attorneys' fees.   In the Fifth Circuit, "[s]tate law controls both the award of

and the reasonableness of fees awarded where state law supplies the rule of decision."   *DP

Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421 433 (5th Cir. 2003) (quoting *Mathis v. Exxon Corp.*,

302 F.3d 448, 461 (5th Cir. 2002)); *see also Ingalls Shipbuilding v. Fed. Inc. Co.*, 410 F.3d 214,

230 (5th Cir. 2000).   This rule is the same where the law of another country—in this case,

Mexico—rather than the law of another state, supplies the rule.   [Dkt. No. 189-1 at 14 (citing

*RLS Assoc., LLC v. United Bank of Kuwait PLC*, 2005 WL 578917, at *4-5 (S.D.N.Y. March 11,

2005) (unpublished); *DeRoburt v. Gannett Co.*, 558 F. Supp. 1223, 1228 (D. Hawaii 1983);

*Bensen v. Am. Ultramar Ltd.*, 1997 WL 317343, at *7-8 (S.D.N.Y. June 12, 1997) (unpublished))].   As Defendant recognizes, the Fifth Circuit—as well as this Court—has established that Mexican law, and not Texas law, controls the award of fees in this case.  [Dkt. No. 189-1 at 11-13].   Thus, per Fifth Circuit precedent, the Court will calculate the award of attorneys' fees pursuant to Mexican law, rather than follow Texas or federal procedural rules.

### 2.   Calculation of Attorneys' Fees under Mexican Law

Defendant correctly asserts that under Mexican law, "the amount of an award of attorneys' fees is determined by an attorneys' fee tariff."  [*Id.* at 15 (citing de la Garza Decl. at ¶ 5)].   In Mexico, "procedural costs consist of the sum that, according to the court's appraisal under the provisions of the applicable fee tariff scale (*arancel*), the prevailing party should have incurred or did incur, minus any superfluous expense."  Fed. Civ. P. Code, art. 7.  De la Garza points out that "[w]henever attorney's fees are awarded, the corresponding liquidation will be performed in accordance with the percentages and/or formulas contained in the applicable statute (Tariff Act)."  [Dkt. No. 189-2 at ¶ 5 (de la Garza Decl.)].   While de la Garza is correct in asserting that "courts . . . resort to local tariffs when resolving the issue of attorneys' fees", he errs in concluding that "the courts have traditionally resorted to the Federal District statutes." [*See id.*].   As stated above, this Court will apply the local procedural code of the State of Nuevo Leon, which requires that "costs for [attorney's] fees shall be regulated according to the respective fee scale."  N. L. Civ. P. Code, art. 96.  "If there is no fee scale that regulates the profession in question, the fees shall be determined by a judge- or tribunal-designated expert with knowledge of the incident."  *Id.*  Because Nuevo Leon has its own *arancel* for attorneys'

fees,[16] and because the laws of the Federal District are irrelevant to this case, the Court will calculate the amount of fees according to Nuevo Leon's *arancel*.

### 3.      Nuevo Leon's Attorneys' Fee Scale (Arancel)

Nuevo Leon's A*rancel* "indicates the way in which attorneys shall be compensated, setting out the requirements for a fee contract between the attorneys and their clients."  Arancel de Abogados en el Estado de Nuevo Leon (hereinafter "A*rancel*") pmbl.  According to the *Arancel*, it is preferable that the parties set their attorneys' fees by mutual agreement.  *Id.* art. 1.  In the absence of an agreement, the provisions of the *Arancel* govern.  *Id.* art. 2.  Plaintiff entered into a contingency fee agreement with its attorneys two years after commencement of the litigation.  Pursuant to this agreement, Plaintiff agreed to pay its attorneys 150% of the time (per hour) invested in the case if Plaintiff sought only to recover the marks in dispute or 33.3% of the judgment if Plaintiff also decided to pursue damages.  [Dkt. No. 185-5 at ¶ 3].  However, Article 11 states that any fees that the attorney and his client agree to shall *only* affect them, so long as the agreement clearly states the percentage of the corresponding fees or the set amount that should result therefrom.  Thus, the Court is not bound to consider the contingency fee agreement for purposes of awarding fees.  Rather, the Court will calculate the amount of fees pursuant to Article 6 of the *Arancel*, which provides that in adversary proceedings where the amount in dispute has been determined or is determinable, the attorneys shall recover as fees for all their labor, from the beginning to the end of the proceedings, a fixed tariff quota consistent with a percentage of the judgment, according to the following scale:

---

[16] The "Arancel de Abogados en el Estado de Nuevo Leon" is available at: www.congreso-nl.gob.mx (follow "Leyes" hyperlink under "Trabajo Legislativo"; then follow "Arancel de Abogados" hyperlink under "Leyes (124)" drop-down menu).

| Amount of the Claim | Applicable Percentage |
|---|---|
| Up to 180 quotas-----------------------------------------------20% | Twenty per cent |
| More than 180 quotas and up to 1,800 quotas-----------------15% | Fifteen per cent |
| More than 1,800 quotas-------------------------------------10% | Ten per cent |

According to Article 27 of the Civil Procedure Code of Nuevo Leon, a quota is equivalent to the daily minimum wage in effect in the economic zone where the court or tribunal is located. *See also Arancel* art. 37. It is impossible for the Court to determine the exact tribunal where this case would have been tried had the case been tried in Mexico. However, the Court will follow the *arancel* pursuant to the quotas of the tribunal in the same economic zone of Plaintiff's principal place of business. According to the Agreement, "El Pollo Loco, S.A. de C.V., a Mexico corporation, [is] located at Av. Fuentes del Valle 101-B Pte., Garza Garcia, N.L., Mexico 66220 . . . ." [Dkt. No. 1 at 37]. Garza Garcia is located in zone "B", in which the daily minimum wage is $50.96 Mexican Pesos[17] (approximately $4.68 U.S. Dollars[18]). The judgment in this case was for Twenty Million Two Hundred Fifty-One Thousand and no/100 Dollars ($20,251,000.00). According to the same conversion scale, this is equivalent to Two Hundred Twenty Million Seven Hundred Nineteen Thousand Six Hundred Ninety Nine and 20/100 Mexican Pesos ($220,719,699.20), or Four Million Three Hundred Thirty-One Thousand Two Hundred Thirty Four (4,331,234) zone "B" quotas. According to the *Arancel*, because the judgment exceeds 1,800 quotas, the applicable percentage of attorneys' fees is 10% of the final judgment, or Two Million Twenty-Five Thousand One Hundred and no/100 Dollars ($2,025,100.00). Article 16 of

---

[17] *See* Salarios Minimos 2008, *available at*
http://www.sat.gob.mx/sitio_internet/asistencia_contribuyente/informacion_frecuente/salarios_minimos/.

[18] This amount is based on an exchange rate of $10.8992 pesos per dollar, per Reuters' January 18, 2008 foreign-exchange quotation. *See World Value of the Dollar*, WALL ST. J., Jan. 18, 2008, at C8.

the *Arancel* also provides that on appeal, an additional five per cent (5%), or One Million Six Thousand Two Hundred Fifty and no/100 Dollars ($1,006,250.00) shall be awarded.

### E.      Non-Taxable Expenses

In addition to attorneys' fees, Plaintiff is requesting reimbursement in a total amount of Two Hundred Forty-Two Thousand Four Hundred Sixty Seven and 42/100 Dollars ($242,467.42) for the following expenses: travel (including air fare, lodging, and meals); expert fees; cost of videotape depositions; computer research fees; photocopying costs; telephone charges; facsimile charges; delivery and courier charges; and trial support expenses (including cost of audiovisual equipment, graphic exhibits, and document scanning and retrieval).  [Dkt. Nos. 185 at 20-23, 185-2 at 2-3].  Plaintiff is not entitled to recover the expenses it seeks.  The Court will evaluate Plaintiff's request for non-taxable expenses under Mexican law.  However, where Mexican law is silent on a particular issue, American federal law will govern.

As stated above, the Mexican Federal Civil Code defines procedural costs as those costs that the prevailing party expended—minus any superfluous expenses—calculated by the Court pursuant to the provisions of the applicable *arancel*.  Fed. Civ. P. Code art. 7.  Similarly, Article 5 of the *Arancel* explains that judicial costs include both attorneys' fees and other expenses that result from litigation.  The *Arancel* specifies in detail what expenses shall be included and how they are to be calculated.

Pursuant to American federal law, costs other than attorneys' fees are to be awarded to the prevailing party as a matter of course unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise.  Fed. R. Civ. P. 54(d)(1).  The provisions of 28 U.S.C. § 1920, however, limit the court's discretion in taxing costs against the unsuccessful litigant.  Section 1920 permits the following recoverable costs:  (1) fees of the clerk and marshal;

31

(2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C.S. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C.S. § 1828.  A district court may decline to award costs listed in the statute, but may not award costs omitted from it.  *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).  A district court generally has wide discretion in awarding costs.  *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233-34 (1964); *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir. 1991).  However, this discretion is not unfettered.  *See Hall*, 937 F.2d at 216-17.  Additionally, items proposed by prevailing parties as costs should always be given careful scrutiny.  *Farmer*, 379 U.S. at 235.  Nevertheless, "only when a clear abuse of discretion is shown can an award of costs be overturned."  *In re Nissan Antitrust Litigation*, 577 F.2d 910, 918 (5th Cir. 1978); *see also Fogleman v. Aramco*, 920 F.2d 278, 285-87 (5th Cir. 1991).

Defendant correctly points out that Plaintiff erroneously relies on cases that "base their award of those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client on § 1988's statutory authorization for the award of a reasonable attorneys' fee."  [Dkt. No. 189-1 at 32 (internal quotation marks and citations omitted)].  Thus, no such statutory authorization exists here; rather, § 1920 governs.

### 1.    *Travel Expenses*

Plaintiff asserts a right to recover $7,534.91 for travel expenses.  However, Article 26 of the *Arancel* provides that an attorney's travel costs are the responsibility of the client.  Thus,

under Mexican law, Plaintiff, not Defendant, is responsible for this expense.  The result is the same under American federal law—it is well settled that attorney travel expenses are not recoverable under 28 U.S.C. § 1920.  *See Coats*, 5 F.3d at 891.  As such, Plaintiff is not entitled to recover travel expenses from Defendant.

### 2.    *Expert Fees*

Plaintiff also seeks to recover expert fees in the amount of $209,105.00.  [Dkt. Nos. 185 at 22-23, 185-2 at 2].  As a general rule, in Nuevo Leon, each party must pay its own expert fees, regardless of the court's award of costs.  N.L. Civ. P. Code art. 1019.  Similarly, Mexico's Federal Civil Procedure Code provides that "each party's experts shall be paid by the party that designated the expert . . . ."  Art. 159.  Thus, the Court denies Plaintiff's request to include its expert fees as part of the award.  However, the judge may, in its discretion, order a party to pay its adversary's expert fees if the judge considers that such an award is appropriate given the particular circumstances of the case, such as bad faith or frivolity, but is not obliged to do so.  *Id.* In this case, the Court does not consider that any particular circumstances warrant ordering the Defendant to pay for Plaintiff's expert fees.

Under American law, because recovery of expert fees is not authorized by statute, Plaintiff may not be reimbursed for them.  Pursuant to § 1920, expert fees are not a type of expense that courts tax as costs.  Plaintiff is requesting reimbursement for the fees incurred from the independent work of its Mexican law, market, and damages experts, [Dkt. No. 185-2 at 2], which is different from what § 1920 provides.  As such, Plaintiff is not entitled to recover its expert fees from Defendant.

### 3.     Other Expenses

The *Arancel* itself does not provide for payment of the other expenses that Plaintiff seeks—costs of videotape depositions, computer research fees, trial support expenses, or other office-related costs.  However, unlike travel expenses and expert fees, it also does not prohibit them—or rather, does not specifically make them the responsibility of the client.  As such, given how the relevant procedural codes define costs—including all expenses derived from litigation—and because our federal procedural rules allow for some costs, but limits recovery for others, the Court will determine whether Plaintiff is entitled to these expenses pursuant to American federal procedural law.

### a.     Videotape Depositions

Plaintiff seeks reimbursement of videotape deposition expenses in the amount of $3,355.81.  [Dkt. Nos. 185 at 21, 185-2 at 3].  However, the Fifth Circuit has consistently held that videotaped depositions are not taxable as costs under 28 U.S.C. § 1920.  *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529-30 (5th Cir. 2001) (holding that costs of videotaped depositions are not recoverable under § 1920); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998) (stating that "There is no provision for videotapes of depositions."); *Coats*, 5 F.3d at 891 (holding that video technician fees incurred for video depositions are not recoverable under § 1920.  As such, Plaintiff is not entitled to recover the cost of videotape depositions.

### b.     Computer Research Fees

Next, Plaintiff claims entitlement to expenses for online research in the amount of $528.91.  [Dkt. Nos. 185 at 21, 185-2 at 3].  However, § 1920 confers no right to reimbursement for such an expense.  The cases that Plaintiff cites to in support of its claim are civil rights cases,

in which the rules for recovery of costs are more flexible than for other cases.  In Title VII cases, a district court has an additional source of authority for granting attorneys' fees and costs—42 U.S.C. § 2000e-5(k).  Under this provision, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 2000e-5(k).  The Fifth Circuit has interpreted the "attorney's fee" award under § 2000e-5(k) to include "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services," such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs.  *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 557 (5th Cir. 1987).

### c. Photocopying Costs, Telephone Charges, Facsimile Charges, and Delivery and Courier Charges

Plaintiff also seeks $6,069.16 for photocopy, telephone, facsimile, and delivery and courier charges.  [Dkt. Nos. 185 at 22, 185-2 at 3].  Section 1920 does not provide for taxation of telephone, facsimile, or courier charges.  As such, Plaintiff is not entitled to the cost of these expenses.  However, pursuant to 28 U.S.C. § 1920(4), costs may be taxed for "fees for exemplification and copies of papers necessarily obtained for use in the case."  Before the district court can tax costs for photocopies, it must find that the photocopies for which costs are sought were necessarily obtained for use in the litigation.  *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).  Moreover, the party seeking such costs must offer some proof of the necessity of the costs.  *See Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999).  Hence, reproductions necessarily obtained for use in the case are only included within taxable costs if the prevailing party demonstrates that necessity.  *See Fogleman*, 920 F.2d at 286; *see also Davis Mts. Trans-Pecos Heritage Ass'n v. United States Air Force*, 2003 U.S. Dist. LEXIS 26095, No. Civ. A 5:01-CV-289-C, 2003 WL 21251094, at *2 (N.D. Tex. May 27,

2003) (disallowing unsubstantiated photocopying costs).  In the instant case, Plaintiff provides no information regarding the photocopies it made or how necessary they were to their case. Thus, because Plaintiff has failed to itemize, breakdown, or attach documentation to support the costs requested, it has failed to explain the basis for its expenses and as such, the Court cannot allow them.

### d.      Trial Support Expenses

Next, Plaintiff requests trial support expenses that include the cost of audiovisual equipment, graphic exhibits, and document scanning and retrieval in the amount of $5,029.52. [Dkt. Nos. 185 at 22, 185-2 at 3].  As Defendant points out, such expenses are not recoverable under § 1920.  [Dkt. No. 189 at 37 (citing *Coats*, 5 F.3d at 891)].  In support of its request for trial support expenses, Plaintiff cites a case in which the court allowed for certain trial expenses where the court had requested the equipment.  *See J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 615 (5th Cir. 1985).  In this case, Plaintiff has failed to indicate that it requested prior approval for these expenses.  Furthermore, Plaintiff provides no information regarding the exhibits.  As such, Plaintiff is not entitled to trial support expenses.

### e.      Translation/Interpretation Services

Finally, Plaintiff is requesting reimbursement for its interpreter/translator Claudia Robalin in the amount of $3,153.52, [Dkt. No. 185-2 at 2], and for translation of Mexican Legal Opinions in the amount of $3,213.12, [*Id.* at 3].  Pursuant to § 1920(6), the cost of interpreters may be awarded when the interpreters are appointed by the court or when the translation services fall under 28 U.S.C. § 1828, which is limited to special interpretation services.  Plaintiff has provided no indication or proof that the Court effectuated such an order or that the translation services fall under § 1828.  As such, those fees are not recoverable.

### III.    CONCLUSION

For the aforementioned reasons, Plaintiff's application is GRANTED in part and DENIED in part.  Plaintiff is hereby awarded $2,025,100.00 in attorneys' fees through the trial of this case and, should an appeal be taken and Plaintiff prevails on appeal, an additional amount of $1,006,250.00 shall be awarded for such appeal.  Furthermore, Plaintiff's request for all related non-taxable expenses is DENIED.

IT IS SO ORDERED.

DONE this 12th day of February, 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**